May it please the Court, my name is Matt Lapple, I'm with Covington & Burling, and I am pro bono counsel to Appellant Quillie Harvey. Fundamentally, this appeal is about whether the California Department of Corrections failed to follow its own rules when dealing with prison grievances, and as a result of those failures, caused my client to exhaust his administrative remedies. My client is a prisoner at Salinas Valley Prison, and he appeals the dismissal of two of his Section 1983 civil rights actions for alleged failure to exhaust administrative remedies. Because he did exhaust on both of his claims, his dismissal should be reversed, and the case should be remanded for hearing of the merits. Counsel, let me just ask you this. No one disputes the fact that he was physically able to file some sort of grievance within 15 days. What do you think is the appropriate standard for determining whether a grievance falls in the morella, unable to file, exception if not physical ability? Yes, Your Honor, no one disputes that he had the physical ability to file the forms within the time limit. We believe that the appropriate standard is whether he was aware of the nature of his injuries, and or whether he was aware of the nature of the force that was used against him. This Court suggested in its remand decision on Noe v. Woodward that the Court would consider that as an exception, and it fundamentally makes sense that if you aren't aware that you've been harmed because you don't know the nature of the force that was applied against you, and you don't know the nature of the injuries that resulted from that force, how can you be required to file a grievance? The complaint is basically excessive force. Yes, Your Honor. So why do you have to know the injuries? Well, in the circumstances here, he may have recognized that he was, obviously he recognized that he was pepper sprayed during the extraction. What he did not know was that he was exposed to a combination of pepper sprays, and that that detrimental, that combination had a detrimental effect on his health. He believed for approximately a month that he had suffered a cold, and that he got this cold because he was required to sit outside wearing only his boxer shorts while he was waiting for an ad-stack cell to open up. Well, I'd have to go to the injury. Do you think, are you saying he didn't know it was excessive force until he went to a doctor and found out what the injuries were? Yes, Your Honor. He did not know that he was subjected to that particular aspect of excessive force. No, that, not that particular aspect. But did he know that they had used excessive force when they sprayed this pepper spray throughout the building, whatever it was, it drifted all over, it made him cough and choke or whatever, and then the individual spray also, that he didn't, wasn't aware that that constituted excessive force? No, Your Honor, I don't believe he did. And that's demonstrated in his uncontroverted declaration testimony. I don't understand. He may not have known what the consequences would be, but whether or not there was excessive force used, why didn't he know that immediately upon the use of the force? In other words, if they sprayed all, in other words, if he said, they said he refused to leave his cell, and he said, I'm willing to leave the cell if you do such a thing, why didn't he know at that point that excessive force had been used? Because, Your Honor, at that point, he did not know that he'd been subjected to multiple kinds of pepper spray. And the excessive force claim isn't simply that he was extracted from his cell for refusing to obey a command. But I don't understand why, how the use of multiple types of pepper spray was conclusive on whether there was excessive force. I mean, either they had no business spraying him, or it was permissible. I mean, and I suppose he would make the contention that they didn't have to fill my cell with all of that stuff to get me out of there. Then I find it difficult to see why he didn't know. If the claim is a use of excessive force, I didn't know, I don't know why he didn't realize that there had been excessive force when the force was exerted against him. He said that he was trouble breathing and choking in his cell almost incapacitated him during the operation, so I said a couple of hours. That would seem to me to be a reason to contend that that was excessive. I think, unfortunately, part of the answer, Your Honor, is that pepper spraying is not an uncommon occurrence in prison. But what is an uncommon occurrence, and what he alleges was the excessive force, was being exposed to this detrimental cocktail of pepper spray that had a long-term effect on his health. Okay. I think I'll take your issue one, because we're going to go. Issue two is a little more complicated. I'm not sure. Why don't you just start on issue two? This is Brown v. Bailoff, Your Honor? Yeah. I can go through my recitation. It sounds like you have questions, though, Your Honor. No, I don't think so. I mean, I have a fairly clear idea, but I don't know what questions anyone else would have. This all relates to whether he failed to exhaust his internal prison remedies, which is, I take it it's under this Prison Litigation Reform Act requires, in certain situations now, that before prisoners can go to court, they first must exhaust their administrative remedies. Yes, Your Honor, that's correct. And what he failed to exhaust his administrative remedies on, you say, is the use of excessive force, because he didn't know that the force was excessive until sometime later when he found out what was in the pepper spray and also that he began to develop these medical problems. Yes, Your Honor, and he repeatedly tried to get the – two times he submitted grievances asking the prison to consider his excessive use of force claim. The first time they said it was untimely and that he didn't provide a good explanation. They didn't say why he didn't provide a good explanation. He submitted it again, gave the same explanation, and that time they just screened it out as if it no longer existed. Then when the district court considered it, the district court erred on two grounds. First, they erred – the district court erred because it did not determine that there was exhaustion, but the district court also erred because he made a clear error in his findings of fact. He determined that Mr. Harvey submitted no explanation at all. Okay. Let me just get this. Now we're talking about the – he's complaining now about the notice of discipline for not complying with the cell extraction. Yes, Your Honor. It's really not based on the excessive force with the – okay. And there he filed – there his notice was timely. The event occurred on July 29th. He gave a notice of complaint on August 12th. The question seems to arise later in the process where the State gave him a form that said no more appeals and he didn't appeal. No, actually, Your Honor, I think it was before that. The State said we're granting your appeal. We're going to give you a copy of the videotape and the hearing that you've been asking for. I was skipping past that. He did. They gave him partial relief, supposedly, and said they were going to give him a hearing on the videotape and they never did it. That's right, Your Honor. And so he complained about that and they said it's too late. They said it's too late. And he can't appeal this any further. Right. And then they also still didn't give him the videotape and still didn't give him the hearing. I understand what they said was you defaulted because you failed to appeal a decision in your favor. Your Honor, that's exactly correct. And my question is how can you appeal a decision in your favor? What they said was, well, he should have appealed to raise other issues in the case. Isn't that it basically? It seems that the I understand what happened. First they told him they'd let him see a transcript that had been taken of his removal from the cell. But then six months went by and they didn't do anything. So he then appealed saying, he then said, look, you told me you would let me see this stuff and you haven't done it. And they said, this is too late. You should have objected at the time we said you're entitled to see it. And his answer was, well, I assumed you'd show it to me after you told it to me. That's right. That was his mistake. Assuming when they said they would do something that they would do it. Yes, Your Honor. Unfortunately, that's right. Why don't we hear from the state? Thank you, Your Honor. Good morning, Your Honor. Counsel, before you start, I'm most interested in your response to why your client told Mr. Harper he would get a copy of the videotape in a due process hearing. Now, if he can't ask the courts to enforce that order, what is he supposed to do? Your Honor, the argument that the state makes with regards to the due process claim is that he did fail to follow the proper procedures. You are correct, Your Honor, in that partially granted, his inmate appeal was partially granted. And they told him they would give him a hearing on his RVR. They would allow him to see the cell extraction tape. But they did deny him the relief that he asked if he wasn't given an RVR hearing. They said, well, grant you the primary relief you asked for. And he said, that's the one I really want. If I don't get that off, something else. He wanted his RVR dismissed. The relief he wanted, he got. The other was an alternative. The relief he really wanted, he got. The other was an alternative, which was not his first choice. Right. He didn't get the relief. No, he was told he would get it. He was told he would get his relief. And then they didn't give it to him. They didn't give it to him. How could he have appealed a decision saying that he was entitled to see this stuff and they would give it to him? How could he have appealed that saying why? I should have gotten something more? Well, Your Honor, I suggest that the- You can't appeal from an ordinarily. You can't appeal from a decision in your favor. Yes, you can, Your Honor. Except I don't think that's taught in first-year law school. I would hope so. Your Honor, the inmate appeals process at the California Department of Corrections is not taught at- It's not that different. No. I mean, still, when you tell somebody you're going to get it, you don't have to appeal for that. I appreciate that, Your Honor. However, I would suggest to you the deadline for having an RBR hearing is 30 days. He filed his initial complaint that he hadn't gotten it six months afterwards. They did allow him to file that appeal, requesting his RBR. And they said, hey, we'll give you your RBR hearing, but we deny you the fact that we won't dismiss it and remove it from your file. Now, interestingly, the report also indicates that the cell extraction tape is available and that you'll be given an opportunity to review it. And my suggestion and my advice to Mr. Harvey or anyone was once- He had 15 days. He was told he had 15 days to appeal that partially granted decision. And when 13 or 14 days had gone by and he hadn't been provided the rules violation report, he should have filed another appeal. Did they give him any date when they would turn it over to him? No. They didn't say, we'll turn it over to you within 15 days. No, they did not. They said, we will turn it over to you within 15 days. And it seems to me on the 16th day, he should have said, where's my tape? But they didn't. And he just sort of went along, I suppose, expecting and hoping that one day they'd say to him, here's the tape. And at some point, he realized he wasn't going to get it. And that's when he tried to appeal. And then they said, too late. And it wasn't just a tape. Wasn't it a tape and then a hearing? The tape, he wanted the tape present at the hearing. And we said, well, let me look at the tape, and then we'll have a hearing. And, yeah. He did ask that if that did not happen, that his RBR charge be dismissed and removed from his file. Yeah, but he was satisfied with the relief you gave him. And, you know, sometimes the state doesn't act immediately. And, you know, if you complain, they say, well, you know, we'll give you a hearing when things are a little better, but don't worry. But instead, he waited to see whether the state would keep his promise, don't you? Yes, Your Honor. But I think there's also the understanding with regard, especially to the Woodford v. Nego case, that there is an obligation from the prisoners to exhaust their administrative remedies. And Mr. Harvey is very aware of that. Not when you've ‑‑ what ‑‑ exhaust your remedy when? When they tell you you're going to get something? And then he did complain, finally, when he realized the state wasn't going to give him what they said they would. Then he complained about that. And they said, no, too late. Right, Your Honor. Well, I would contend that he should have filed within the period of time. That would be the proper procedures to exhaust. What's the period of time? What time? The 15 days, Your Honor. He should have filed it five minutes after 5 on the 15th day. That's what you have to do. Five minutes after 5, yes. There may be an argument, but that's not the basis of the decision. There may be an argument that he waited too long and that he should have filed not in six ‑‑ what was it, six months he filed? Five. He should have filed within 30 days or 60 days or something like that. But that was not the basis of the decision. The basis, as far as I can see, is what you suggested, that somehow, even though they told him he won, he should have appealed when he didn't get it within the 15‑day period. Well, he should have appealed within the 15‑day period, so that means he obviously had to be less than 15 days when he made the decision not that he wasn't going to get it. Well, Your Honor, he did wait five and a half months after the initial grants. And that may be too long, but that wasn't the basis of the decision, which I understand that the basis of the decision was he didn't file within 15 days, not that he waited too long for five and a half months. You're right about that, Your Honor. There is one other aspect that I would point out with regards to this claim, and it's clear from the Prison Litigation Reform Act that the inmates are required to exhaust all available remedies. And they did screen out, as you have correctly stated, Judge, that he didn't file within 15 days where this is canceled. And the bottom of the form does say that the screen out may not be appealed. However, the form also says that if you allege that the above reason is inaccurate, then attach an explanation on a separate piece of paper, please return this form to the appeals coordinator with the necessary information. The plaintiff never sent anything in. What was inaccurate about the reason you gave? Well, I think that was his opportunity to explain that, hey, exactly as you have argued, I was waiting for my hearing and I didn't get it. And that could have been a remedy in which they said, oh, okay, we'll give you your hearing or we'll allow you to send it to the next level. That is a possible remedy, Your Honor. But it seemed to me that within a prison format, within a prison, it should be very explicit exactly what the prisoners have to do and when they have to file things and what they have to file before you can say you can't do it because you didn't file it. I mean, there may be prison lawyers around, but this sounds to me as though there's some tricky problems when the 15 days starts to run and when it's being waived and so on. Right, Your Honor. No, I don't think they waived it. I think he should have been proactive and filed it shortly thereafter. Well, it depends on how much you trust prison officials when they tell you they're going to do something. When should you know they're not going to do what they said? That's a fair assumption. Let me ask you a different question. Suppose he waits the full 15 days and hasn't got the tapes and he files his appeal on the 16th day. Would they have thrown him out as untimely? It looks that way. I can't answer that question. I don't think you can answer that question either, Your Honor. No, I can't. No. But the way the case has been presented to us, it sounds to me as though they'd say, you have to file within 15 days and you didn't. 15 days of when they breached their promise. And how do you know when they breached their promise? Midnight on the 15th day. 15th day of what? I mean, they say we're going to give you a hearing. They don't tell you when. So you wait until if they said, look, we changed our mind, we're not going to give you a hearing, then you'd have 15 days. But otherwise, you've got to figure out when they've decided to break their promise. Your Honor, I do. You understand. I understand. I would like just to make my comment. I want to ask you about the other one. Okay. Well, I have one quick thing I need to do is I represent all defendants but defendant Kading. All right. We'll give him a minute. Okay. All right. Sure. The screening action may not be appealed. Yes. Now, if you allege the reason is inaccurate, attach an explanation. Well, does it really mean it may not be appealed or what does that mean? If it's inaccurate. Well, there was nothing inaccurate in what the reasons you gave are. All the facts you gave that were true. I think it was an opportunity to submit on a separate piece of paper an explanation of why. Then they should have said instead of it may not be appealed, if you allege the reason is inaccurate, then it should have said you may complain about this decision, known as appealing, by filing a statement of some kind. But why tell them that you can't appeal and then you say a reason is inaccurate? I don't understand what that's intended to do. You normally would think if you're told you can't appeal, you can't appeal. And now their complaint is that he didn't go to the next step. Right, Your Honor. I would suggest to you that was an opportunity, another remedy that he needed to pursue in order to properly exhaust his administrative remedy. Okay. I do want to give my counsel, I would just ask you to affirm the decision of the District Court regarding both claims. And thank you for your time. Thank you, counsel. May it please the Court. My name is Matt Grigg from the Law Offices of Nancy E. Hudgens. I represent Defendant Eppley Edward Caden. Mr. Caden is implicated in only one of the claims. That's the excessive force claim because he left Salinas Valley State Prison before the events giving rise to Mr. Harvey's due process claim arose. With respect to the excessive force claim, the District Court appropriately concluded that it should be dismissed because Mr. Harvey did not properly exhaust, because he did not file within the 15-working-day limitation. Mr. Harvey argues that, in essence, he should be exempted from the 15-day requirement because he wasn't entirely attuned to the nature of the force or the severity of the results of the alleged use of force. However, the rules require that you file within 15 working days of any decision that adversely affects you. And in this circumstance, it was self-evident to Mr. Harvey at the time of the incident that he was adversely affected by excessive force. He knew at the time that the force was, according to him, wrongful because he said, my windows weren't covered up. He knew at the time that the force was excessive because he's exposed, allegedly, to all this pepper spray all day long. He knew that he sustained harm at the time because he said, geez, my nose was running, my eyes were burning severely, they made me strip out of my clothes, so I was exposed to more spray. So he knew that this was a significant adverse incident, and yet he chose not to appeal in 15 working days. The argument that, gee, I wasn't aware of every aspect of my injuries is not one that's recognized either by the law or by the procedures set forth in the California Code of Regulations. All right. You want us to dismiss Mr. Harvey from this? I'm sorry? Not Mr. Harvey. What's your client's name? Mr. Kayden. Mr. Kayden. Okay. All right. Thank you. Thank you, Your Honor. Just one quick point, Your Honor. As to whether Mr. Harvey could or should have submitted a reminder grievance or an appeal on the videotape issue, the California Code of Regs, the prison regulations themselves, prohibit the filing of duplicates of appeals. And the language specifically is, an appeal which duplicates the opponent's previous appeal upon which a decision has been rendered or is pending. So if my client had filed an appeal on day 14 after he'd gotten his partial grant saying, hey, you haven't executed on the partial grant, that would have been subject to denial as a duplicate appeal. Well, he would have had to file an appeal that said they promised me they would do this and they haven't done it within a reasonable time, whatever that is. Yes, Your Honor. That's correct. Okay. Thank you. Thank you, Your Honor. All right. Court will take a brief recess before the last two cases. All rise. Case to target is submitted, in case you didn't say that.
judges: Friedman, Nelson D. W., Reinhardt